Matthew Strugar, SBN 232951
Law Office of Matthew Strugar
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
Tel. (323) 696-2299
matthew@matthewstrugar.com

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, a nonprofit membership organization, | Case No. |
| Plaintiff | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, | |
| Defendant. | |

**Introduction**

1.      Defendant San Francisco Bay Area Rapid Transit District, commonly known as BART, operates the fifth-largest public transit system in the United States. Paid advertising in BART's stations and trains reach hundreds of thousands of people daily.

2.      Plaintiff Physicians Committee for Responsible Medicine (Physicians Committee) seeks to purchase space in which to run the following advertisement in BART stations and trains to raise public awareness about invasive and often deadly experiments, funded or conducted by Neuralink Corporation (Neuralink), a neurotechnology company co-founded by Elon Musk, in which experimenters remove portions of monkeys' skulls to implant electrodes in their brains:

1
2
3
4
5
6
7
8
9
10
11
12
13



14    3.    Citing two provisions of its advertising content guidelines, BART rejected Physicians

15 Committee's proposed advertisement solely because it mentions Neuralink's primary owner, Elon

16 Musk. BART does not have a legitimate, let alone a compelling, government interest in rejecting

17 Physicians Committee's proposed advertisement. BART's unmoored and indeterminate interpretation

18 and application of its guidelines allow BART to unlawfully discriminate against advertisers based on the

19 content and viewpoint of an advertisement's message. By rejecting Physicians Committee's

20 advertisement, BART violated Physicians Committee's rights under the First and Fourteenth

21 Amendments to the U.S. Constitution and the analogous provisions of the California Constitution.

22                                    **Jurisdiction and Venue**

23    4.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this is an action

24 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the

25 United States. Physicians Committee seeks remedies under 42 U.S.C. §§ 1983 and 1988 (protection of

26 constitutional rights), Fed R. Civ. P. 65 (injunctive relief), and 28 U.S.C. §§ 2201 and 2202 and Fed. R.

27 Civ. P. 57 (declaratory relief).

28    5.    Venue is proper under 28 U.S.C. § 1391 because BART's acts in violation of the United States

Constitution have arisen and continue to arise in the Northern District of California.

**Parties**

6.      Plaintiff Physicians Committee is a nonprofit membership organization headquartered at 5100 Wisconsin Avenue NW, Suite 400, Washington, DC 20016. Established in 1985, Physicians Committee advocates for preventive medicine, supports higher ethical standards in research, and conducts clinical research. For more than 35 years, Physicians Committee has worked to improve public safety and public health by ensuring that medical research is performed using the best scientific methods consistent with the highest ethical principles.

7.      Defendant BART is a government entity created by the California State Legislature and composed of Alameda County, Contra Costa County, and San Francisco City and County. BART operates 131 miles of track and 50 stations in five counties, carrying approximately 405,000 trips on an average weekday prior to the COVID-19 pandemic. At all times relevant to the matters set forth in this Complaint, BART acted under color of state law.

**Statement of Facts**

8.      BART sells advertising space, including more than 2,500 posters in stations and 5,300 posters on trains, to paid advertisers.

9.      Outfront Media Group, LLC (Outfront) serves as BART's advertising manager for sales and placement. BART, Advertising Opportunities, https://www.bart.gov/about/business/advertising (last accessed June 23, 2022). BART has contracted with Outfront to perform this service through 2031, pursuant to BART's "Agreement No. 6M7266." *See* BART, Executive Decision Document: Amendment to the Advertising Franchise Agreement (No. 6M7266), 2020, https://bart.legistar.com/View.ashx?M=F&ID=8741219&GUID=E0194007-7FED-40B4-A897-EA85D787DE6E (last accessed June 23, 2022).

10.     Prospective advertisers submit proposed advertisements to Outfront, but BART, not Outfront, determines whether a proposed advertisement complies with BART's advertising policy.

11.     At all times relevant to the matters set forth in this Complaint, BART had and currently has in place a written policy, entitled "BART Advertising Content Guidelines" and published at https://www.bart.gov/sites/default/files/docs/BART%20Advertising%20Content%20Guidelines%2001-

23-2020.pdf, concerning the acceptance of advertising to run in the BART system (the Policy). Among other things, the Policy states,

> BART shall retain control over the nature of advertisements accepted for posting in the BART system, and maintain its advertising space as a nonpublic forum with limited content neutral subject matter restrictions.
>
> . . .
>
> **B. Prohibited Advertising Categories**
>
> Notwithstanding any provisions in Section A of these Guidelines, advertising content that falls into one or more of the following categories is prohibited in the BART system based on inconsistency with the goals and objectives described above:
>
> > 1. **Political or Public Issue Content.** Any material that, when viewed as a whole, can reasonably be regarded as directly:
> >
> > > a. Supporting or opposing a political party;
> > >
> > > b. Supporting or opposing any political or judicial office holder;
> > >
> > > . . .
> > >
> > > k. Supporting or opposing the election of any candidate or group of candidates;
> > >
> > > . . .
> > >
> > > m. Depicting an image or images of one or more living political or judicial figures or depicting an image of one or more political or judicial figures that have died within the last five (5) years;
> > >
> > > n. Referring to one or more living political or judicial figures or referring to one or more political or judicial figures that have died within the last five (5) years;
> > >
> > > . . .
> >
> > 5. **False, Misleading, or Tortious Content.** Any material that depicts or, when viewed as a whole, can reasonably be regarded as:
> >
> > > . . .
> > >
> > > d. Constituting a tort of libel, trade libel, public disclosure of private facts, intrusion into private matters, misappropriation of a person's name or likeness, or depiction in a false light; . . . .

12.     In 2021, Physicians Committee initiated a campaign, which is still active, to raise public awareness about experiments, funded or conducted by Neuralink, in which experimenters remove portions of animals' skulls to implant electrodes in the animals' brains, purportedly to develop a "brain-machine interface."

13.     Since 2017, at its own facilities or at facilities with which it directly contracts, Neuralink has subjected monkeys, pigs, sheep, and rats to these invasive and often deadly brain experiments.

14.     Neuralink has released a limited amount of specially selected and edited video footage of these experiments via its social media channels to convey the impression that it is making progress toward the development of its "brain-machine interface."

15.     Neuralink has not released all video footage of these experiments in original, unedited form despite repeated requests from members of the public and from Physicians Committee for it to do so.

16.     In conducting some of these experiments, experimenters have failed to provide dying monkeys with adequate veterinary care; inappropriately used a substance known as "BioGlue" to seal experimental holes drilled in monkeys' skulls even though BioGlue is known to be toxic to nervous (brain) tissue; and failed to provide for the psychological well-being of monkeys assigned to the experiment.

17.     Monkeys used in the experiments were caged alone, had steel posts screwed to their skulls, suffered "facial trauma," experienced seizures following brain implants, and had recurring infections at implant sites. In some cases, experimenters euthanized monkeys because their overall health condition significantly deteriorated.

18.     Elon Musk co-founded and is the majority owner of Neuralink. Mr. Musk does not hold political office, is not a judicial office holder, and is not a candidate for either. Mr. Musk is generally recognized as the wealthiest individual in the world.

19.     As part of this ongoing public education campaign, Physicians Committee seeks to run an advertisement in BART's stations and trains.

20.     On March 18, 2022, Physicians Committee contacted BART's advertising manager, seeking to place an advertisement with BART.

21.     On that same date, Physicians Committee submitted an "initial concept" of the proposed

advertisement (Original Proposal). The Original Proposal included a photograph of a caged monkey and the following text: "ELON MUSK: Release the Videos! What Are You Hiding?" The "initial concept" is depicted below:



22.     On March 30, 2022, BART rejected the Original Proposal, stating via its advertising manager, "It most likely violates provision B.5.d. related to the use of Elon Musk's name. And BART Legal believes it may also violate B.1.n., again related to use of Elon Musk's name. We cannot approve this ad."

23.     On April 12, 2022, Physicians Committee submitted a revised proposal (Revised Proposal) for BART's consideration. The Revised Proposal was identical to the Original Proposal, except that it substituted the "ELON MUSK" with "NEURALINK."

24.     On April 29, 2022, BART approved the Revised Proposal.

25.     On May 3, 2022, Physicians Committee requested that BART reconsider its rejection of the Original Proposal, stating,

> Citing the BART Advertising Content Guidelines, BART stated that the ad "most likely violates provision B.5.d. related to the use of Elon Musk's name. And BART Legal believes it may also violate B.1.n., again related to use of Elon Musk's name." Those provisions respectively prohibit content "[c]onstituting a tort of libel, trade libel, public disclosure of private facts, intrusion into private matters, misappropriation of a person's name or likeness, or depiction in a false light" or "[r]eferring to one or more living political or judicial figures or referring to one or more political or judicial figures that have died within the last five (5) years."

> Longstanding U.S. Supreme Court doctrine holds that First Amendment protections against potential defamation claims are at their strongest in "the area of public debate about public figures." Hustler Magazine v. Falwell, 485 U.S. 46, 53 (1988); see also Harte-Hanks Commc'ns v. Connaughton, 491 U.S. 657, 659 (1989) (stating that public figures may not recover damages for defamatory falsehoods without clear and convincing proof of actual

malice). As a result, the concerns that provision B.5.d seeks to address are minimal in the context of truthful statements about the world's wealthiest person.

Additionally, provision B.1.n does not apply as a factual matter in this instance because Mr. Musk is neither a "political" nor a "judicial" figure. Mr. Musk has not been elected to any government post, nor is he known to be a candidate for one. The Guidelines intentionally use narrow terms that describe public officials, as opposed to the broader "public figure" language used in Supreme Court defamation cases such as <u>Harte-Hanks Commc'ns</u> and applicable to celebrities like Mr. Musk. Mr. Musk is a public figure, but he is not a political or judicial figure. Therefore B.1.n is inapplicable to the proposed ad.

26.   On May 24, 2022, BART reiterated its rejection of the Original Proposal, stating via its advertising manager,

It is the District's determination that the ad violates provision B.5.d through misappropriation of name or likeness and depiction in a false light. The issue remains that this is use of an individual's name without permission to imply malfeasance on his part and direct control of materials violates the District's advertising policy.

BART has also determined that the ad violates provision B.1.n. The language of that provision is intended to cover the broad category of prominent and therefore potentially controversial political figures and does not require that the political figure be in office or currently seeking office. BART considers Elon Musk to be a political figure, based on his directed lobbying and outspoken addresses on political issues that are prominently reported on.

Based on the above, BART upholds the original determination that this ad does not comply with the Content Guidelines and will not be posted. But as a reminder, the revised ad you submitted (as attached, which reads, "NEURALINK: Release the Videos! What Are You Hiding?...") is approved for posting.

27.   BART's Policy does not define "political." Because the Policy does not define this term, the Policy fails to enable a reasonable member of the public to know which advertisements are permitted or prohibited under provision B.1.n of the Policy, and it vests BART with the unfettered discretion to decide which advertisements to permit or reject. This unfettered discretion invites constitutionally prohibited viewpoint discrimination.

28.   BART's rejection of the Original Proposal is a manifestation of this unfettered discretion. Policy provision B.1.a pertains to "a political party," provision B.1.b pertains to a "political or judicial office holder," and provision B.1.k pertains to a "candidate or group of candidates." As is clear from their context, Provisions B.1.m and B.1.n refer to these individuals collectively as "political or judicial

figures."

29.     Yet in rejecting the Original Proposal, BART invented a new definition of "political" that went beyond the specific "party," "office holder," and "candidate" language set forth in the Policy provision. Under its unwritten definition, BART may consider any individual a "political figure" due to subjective considerations that do not appear in the Policy's prohibitions on "Political or Public Issue Content"—such as if the individual is "prominent and therefore potentially controversial," "outspoken" and "prominently reported on"—with no regard to whether the individual is "in office or currently seeking office."

30.     As applied, Policy provision B.5.d also fails to enable a reasonable member of the public to know which advertisements are permitted or prohibited and vests BART with the unfettered discretion to decide which advertisements to permit or reject. For example, Mr. Musk publicly discusses these experiments, so he does not have a privacy right in them. False light also requires falsity, and it is true that Mr. Musk has not released the video footage. Physicians Committee has not acted with malice in designing the Original Proposal. Mr. Musk has not been damaged by the Original Proposal and would not suffer compensable damages if the Original Proposal were to run, in part because, as Physicians Committee noted in its request for reconsideration, "protections against potential defamation claims are at their strongest in 'the area of public debate about public figures.'"

31.     Moreover, BART approved the Revised Proposal's "NEURALINK: Release the Videos!" content despite provision B.5.d's "trade libel" limitation but rejected the Original Proposal's "ELON MUSK: Release the Videos!" content, citing provision B.5.d's analogous limitations applicable to individuals. As Mr. Musk is the majority owner of Neuralink and "prominently reported on" in that role, BART's inconsistent application of Policy provision B.5.d is unreasonable.

32.     BART's Policy and BART's implementation of the Policy are viewpoint-discriminatory. The unguided discretion to determine who is or is not a "political figure" authorizes and encourages discriminatory enforcement against controversial or unpopular viewpoints and has resulted in discriminatory enforcement against controversial or unpopular viewpoints.

33.     The display of Physicians Committee's Original Proposal will cause no harm to BART, BART's passengers, or the public who view BART's advertising space.

34.     Physicians Committee still wishes to place the Original Proposal in BART's advertising spaces. Physicians Committee is suffering irreparable injury during the time its advertisements are not permitted to run in BART advertising spaces. Physicians Committee has no adequate remedy at law.

35.     BART has applied a system of prior restraint to refuse Physicians Committee's Original Proposal on the basis of its viewpoint without constitutionally adequate standards.

**First Cause of Action**
**Infringement of Freedom of Speech**
**First and Fourteenth Amendments to the U.S. Constitution (42 U.S.C. § 1983);**
**California Constitution, Article I, § 2**

36.     Physicians Committee incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

37.     Both facially and as-applied, BART's interpretation and implementation of Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, are unreasonable and constitute viewpoint-based discrimination that is not narrowly tailored to promote a compelling government interest, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution.

38.     Both facially and as-applied, BART's interpretation and implementation of Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, afford BART unfettered discretion in enforcement, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution.

39.     Both facially and as-applied, BART's interpretation and implementation of Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, are overbroad, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution.

40.     BART's refusal to run Physicians Committee's advertisement is unreasonable and viewpoint-discriminatory in violation of the First and Fourteenth Amendments to the United State Constitution.

41.     By rejecting of Physicians Committee's advertisement on the basis of provisions B.1.n and B.5.d, BART failed to follow its own regulations, causing a violation of Physicians Committee's rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution.

42.     Physicians Committee has suffered and will continue to suffer irreparable harm and the deprivation of its rights because of BART's unconstitutional Policy and practices.

**Second Cause of Action**
**Vagueness**
**First and Fourteenth Amendment (42 U.S.C. § 1983)**

43.     Physicians Committee incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

44.     BART's Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, are not clearly defined such that a person of ordinary intelligence can readily determine whether an advertisement is permitted or prohibited.

45.     The criteria BART used and is using to prohibit Physicians Committee's Original Proposal are not clearly defined such that a person of ordinary intelligence can readily determine whether an advertisement is permitted or prohibited. Such vagueness also contributes to the unfettered discretion exercised by BART.

46.     BART's interpretation and implementation of Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, violate Physicians Committee's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article I, Section 2 of the California Constitution.

47.     Physicians Committee has suffered and will continue to suffer irreparable harm and the deprivation of its rights because of BART's unconstitutional Policy and practices.

**Requested Relief**

Physicians Committee requests that this Court:

      a.     Declare that BART has violated and is violating Physicians Committee's rights under the First and Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the California Constitution;

      b.     Declare that BART's Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," is facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution;

      c.     Declare that BART's interpretation and implementation of its Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures," and Policy provision B.5.d, prohibiting false, misleading, or tortious content, are unconstitutional as applied to Physicians Committee's Original Proposal under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution;

      d.     Order BART to accept and display Physicians Committee's Original Proposal on terms no less favorable than those given to other advertisers;

      e.     Enjoin BART, its employees, agents, successors, and assigns, and all persons acting in concert with it, from continuing to enforce BART's Policy provision B.1.n, prohibiting advertisements that refer to "political or judicial figures";

      f.     Award Physicians Committee its costs and reasonable attorneys' fees in this action;

      g.     Grant such other and further relief as the Court deems appropriate.

Dated: June 23, 2022                       By:    /s/ Matthew Strugar
                                              Matthew Strugar
                                              *Attorney for Plaintiff*